An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL RICHMAN; LUZVIMINDA O. DAPAT; AND MICHAEL RICHMAN MARKETING COMPANY, LLC,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE KENNETH C. CORY, DISTRICT JUDGE,
Respondents,
    and
HAINES & KRIEGER, LLC; HAINES & KRIEGER LOAN MODIFICATIONS, LLC; GEORGE HAINES; AND DAVID KRIEGER,
Real Parties in Interest.

No. 60676

**FILED**

MAY 3 1 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

*ORDER DENYING PETITION*

This is an original petition for a writ of mandamus challenging a district court order disqualifying petitioners' counsel and an order denying rehearing of that ruling. Eighth Judicial District Court, Clark County; Kenneth C. Cory, Judge.

In late 2010, real parties in interest George Haines and David Krieger entered into a business relationship with Adam Fenn and Ryan Howard to form Haines & Krieger Realty, LLC (H&K Realty). On December 16, 2010, Fenn and Howard's former employer, Merit Realty, sent a demand letter and draft complaint (the Merit complaint) concerning the formation of H&K Realty and alleging wrongdoing by Fenn, Howard, Haines, Krieger, Haines & Krieger Law Firm (H&K Law Firm), and H&K

13-16050

Realty. Haines and Krieger requested that Fenn and Howard obtain advice on behalf of all the named defendants in the Merit complaint. On December 17, 2010, Fenn and Howard met with Adam Levine of the Law Office of Daniel Marks to discuss the demand letter and Merit complaint. The parties dispute many of the facts surrounding this consultation. The real parties in interest allege that Fenn and Howard provided Levine with confidential and in-depth details regarding facets of H&K Realty. The petitioners allege that Fenn and Howard never indicated they were seeking advice on the behalf of Haines and Krieger. After Merit Realty filed its complaint, all of the defendants chose different representation than Levine and the Law Office of Daniel Marks.

A year later, Levine, on behalf of Michael Richman, a former client of the H&K Law Firm; Luzviminda O. Dapat; and Michael Richman Marketing Company, LLC, (collectively, the Richman Parties) filed a complaint against Haines, Krieger, the H&K Law Firm, and Haines & Krieger Loan Modifications, LLC (collectively, the H&K Parties). The Richman Parties had been involved in a joint venture regarding loan modifications with Haines and Krieger that dissolved in November 2010.

On July 20, 2011, the H&K Parties filed a motion to disqualify the Law Office of Daniel Marks based on their status as prospective clients to Levine and an alleged conflict of interest under Nevada Rule of Professional Conduct (NRPC) 1.18. The H&K Parties alleged that the Richman Parties' complaint included specific allegations arising out of Fenn and Howard's discussion with Levine during their initial consultation about the formation and operation of H&K Realty.

On January 30, 2012, the district court entered its order granting the motion to disqualify and nearly four months later, denied the

Richman Parties' motion for rehearing. It did not hold an evidentiary hearing regarding the contested issues of fact surrounding the information disclosed during Fenn and Howard's initial consultation with Levine. The Richman Parties filed an original petition for writ of mandamus challenging the district court's orders, arguing that the district court manifestly abused its discretion by disqualifying their counsel under NRPC 1.18 and abused its discretion by failing to hold an evidentiary hearing as to contested issues of fact.

*The district court did not manifestly abuse its discretion in disqualifying the Richman Parties' counsel pursuant to NRPC 1.18*

"A writ of mandamus is properly used to challenge a district court's order disqualifying counsel." *Brown v. Eighth Judicial Dist. Court*, 116 Nev. 1200, 1206, 14 P.3d 1266, 1271 (2000). "A writ of mandamus is available to compel the performance of an act that the law requires or to control an arbitrary or capricious exercise of discretion." *Nevada Yellow Cab Corp. v. Eighth Judicial Dist. Court*, 123 Nev. 44, 49, 152 P.3d 737, 740 (2007); *see also* NRS 34.160.

The district court has broad discretion in attorney disqualification matters, and we will not overturn the district court's decision absent a manifest abuse of that discretion. *Nevada Yellow Cab Corp.*, 123 Nev. at 54, 152 P.3d at 743. Disqualification may be necessary to prevent disclosure of confidential information that may be used to an adverse party's disadvantage. *Id.* at 53, 152 P.3d at 743. "[D]oubts should generally be resolved in favor of disqualification." *Brown*, 116 Nev. at 1205, 14 P.3d at 1270. District courts are faced with a "difficult task of balancing competing interests: the right to be represented by counsel of one's choice, each party's right to be free from the risk of even inadvertent

disclosure of confidential information, and the public's interest in the scrupulous administration of justice." *Id.* at 1205, 14 P.3d at 1269-70.

To prevail on a motion for disqualification, the moving party must establish: (1) "'at least a reasonable possibility that some specifically identifiable impropriety did in fact occur,'" and (2) "'the likelihood of public suspicion or obloquy outweighs the social interests which will be served by a lawyer's continued participation in a particular case.'" *Brown, 116 Nev.* at 1205, 14 P.3d at 1270 (quoting *Cronin v. Eighth Judicial Dist. Court,* 105 Nev. 635, 641, 781 P.2d 1150, 1153 (1989), *disapproved of by Nevada Yellow Cab Corp.,* 123 Nev. at 54 n.26, 152 P.3d at 743 n.26).

NRPC 1.18(b) states that even when no attorney-client relationship is formed, a lawyer shall not use or reveal information learned in a consultation with a prospective client, "except as Rule 1.9 would permit with respect to information of a former client."[1] NRPC 1.18(c) prohibits lawyers from representing clients with interests that are materially adverse to those of prospective clients in the same or substantially related matters when the lawyer receives "information from the prospective client that could be significantly harmful to that person in the matter . . . ." Further, NRPC 1.18(c) disqualifies all lawyers in the

---

[1]Rule 1.9 prohibits an attorney's representation of a new client if the matter is (1) substantially similar to that of a former client, (2) materially adverse to that former client, and (3) the attorney acquired confidential information from the former client that is relevant to the new matter. In these cases, the former client must give informed, written consent before the attorney can represent the new client. *See* NRPC 1.9(a) and (b)(3). NRPC 1.9(c) prohibits lawyers from using or revealing information relating to a former client except as the "Rules would permit or require with respect to a client." In other words, the former client would need to provide informed, written consent.

firm of the disqualified lawyer, except for narrow exceptions. These exceptions allow representation if: (1) the affected client and prospective client give informed, written consent; or (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information, is timely screened, and written notice is given to the prospective client. *See* NRPC 1.18(d).

Given the similarities between NRPC 1.9 and NRPC 1.18, we turn to case law discussing disqualification under NRPC 1.9 for guidance. In *Nevada Yellow Cab Corp.*, we concluded that disqualifications under NRPC 1.9 require the moving party to show: "(1) that it had an attorney-client relationship with the lawyer, (2) that the former matter and the current matter are substantially related, and (3) that the current representation is adverse to the party seeking disqualification." 123 Nev. at 50, 152 P.3d at 741. Thus, disqualifications under NRPC 1.18 should require the moving party to show that (1) it was a prospective client of the lawyer, (2) the current matter and the former matter are substantially related, (3) the current representation is adverse to the party seeking disqualification, and (4) the lawyer received confidential information that could be significantly harmful to the moving party. *See* NRPC 1.18(c); *see also Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 900 (W.D. Mich. 2009) (concluding that motions to disqualify premised on RPC 1.18 "should be analyzed the same as a motion to disqualify pursuant to a former client relationship with the additional requirement that the lawyer receive information that could be 'significantly harmful'"); *Sturdivant v. Sturdivant*, 241 S.W.3d 740, 746-47 (Ark. 2006) (applying Arkansas' version of RPC 1.18, a wife's lawyer in a custody matter was disqualified because the husband had consulted with a member of the lawyer's firm

and disclosed confidential information concerning the children and former wife that could be significantly harmful to the husband, the moving party).

*Substantial evidence supported the district court's finding that the H&K Parties were prospective clients for purposes of NRPC 1.18*

The Richman Parties argue that the H&K Parties were not prospective clients, and NRPC 1.18 does not recognize a prospective client by agency. We disagree.

We review a district court's factual determinations deferentially and will not overturn such findings if supported by substantial evidence, unless clearly erroneous. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009). NRPC 1.18(a) defines a prospective client as "[a] person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client." We have previously recognized third-party standing in disqualification matters and numerous jurisdictions recognize prospective clients by agency or through third-parties. *See Liapis v. Second Judicial Dist. Court*, 128 Nev. \_\_\_, \_\_\_, 282 P.3d 733, 737-38 (2012) (citations omitted) (concluding that standing to bring a motion to disqualify based on a third-party conflict of interest involves establishing that (1) the lawyer's representation impacts a legal interest because a "specifically identifiable impropriety has occurred," (2) an ethical breach "infects the litigation," or (3) there is a "breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed"); *see also Jack Eckerd Corp. v. Dart Grp. Corp.*, 621 F. Supp. 725, 732 (D. Del. 1985); *Matter of King Res. Co.*, 20 B.R. 191, 198 (D. Colo. 1982); *In re Modanlo*, 342 B.R. 230, 235-36 (D. Md. 2006); *Harkobusic v. Gen. Am. Transp. Corp.*, 31 F.R.D. 264, 266 (W.D. Pa.1962); *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1191 (4th Cir. 1991).

We conclude that substantial evidence supported the district court's finding that Fenn and Howard consulted with Levine regarding the potential liability of the defendants in the Merit complaint, which included Fenn and Howard as well as the H&K Law Firm, H&K Realty, Haines, and Krieger. The parties dispute what was actually discussed at the initial consultation, but, at the initial consultation, Fenn produced the Merit complaint and demand letter that alleged wrongdoing by Fenn, Howard, Haines, Krieger, H&K Realty, and the H&K Law Firm. Fenn also listed his place of employment as H&K Realty on the new client information sheet during the initial consultation, and Levine sent the draft retainer agreement to Fenn's H&K Realty email address. Levine should have been aware of the potential for representing all defendants involved. Haines and Krieger attest that they asked Fenn and Howard to obtain legal advice because the Merit demand letter required a response by December 17, 2010. Haines and Krieger did not seek the advice of separate counsel before this deadline. The H&K Law Firm reimbursed Fenn for the consultation. These facts provided substantial evidence to support the district court's finding that all defendants became prospective clients of Levine and the Law Office of Daniel Marks.

> *Substantial evidence supported the district court's findings, under NRPC 1.18, that the current matter is substantially similar to the former matter, the current representation would be adverse to the H&K Parties, and confidential information was received and could be harmful to the H&K Parties*

The Richman Parties argue that their interests were not materially adverse to Fenn or Howard and did not involve the "same or substantially-related matter" to the Merit action. The Richman Parties further argue that respondents have failed to demonstrate how any

information communicated by Fenn or Howard would be significantly harmful or that an impropriety occurred.[2] We disagree.

Whether two matters are substantially related requires the district court to make a factual determination. *See Waid v Eighth Judicial Dist. Court*, 121 Nev. 605, 610, 119 P.3d 1219, 1223 (2005) (discussing how to determine whether two matters were substantially related as it relates to disqualification under former SCR 159, equivalent to NRPC 1.9). In *Waid*, we adopted a three-part test for determining whether a former and present matter are substantially related: the district court must "(1) make a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether the information is relevant to the issues raised in the present litigation." *Id.*

The district court, here, found that "[i]t is 'reasonable to infer' that Mr. Levine received confidential information from Messrs. Fenn and Howard during the meeting on December 17, 2010 [sic] related to the

---

[2]The Richman Parties argue that the H&K Parties waived their right to seek disqualification by waiting too long to seek disqualification. However, the H&K Parties could not adequately file a motion for disqualification before the Richman Parties filed their complaint because its contents would have been unknown. The H&K Parties filed their motion to disqualify just over a month after the Richman Parties filed their complaint on June 10, 2011. Delay alone is insufficient to establish a waiver and the H&K Parties did not relinquish a known right. *See Nevada Yellow Cab Corp.*, 123 Nev. at 48-50, 152 P.3d at 740-41 (holding hat a delay of two years was not sufficient to waive rights when counsel's conduct did not demonstrate a clear intent to relinquish its right to challenge the potential conflict).

formation and operation of H&K Realty," and such information "is relevant to the issues raised in this litigation."

The H&K Parties contend that there were at least five allegations in the Richman complaint directly relating to the confidential information regarding the formation and operation of H&K Realty that Fenn and Howard conveyed to Levine. The Richman complaint alleges that the Richman Parties "developed the idea that they could become a one-stop shop for shorts [sic] sales, residential loan modifications and commercial loan modifications" and approached the H&K Parties about the idea. The complaint also alleges that "[f]rom February 2010 through approximately September 2010 Plaintiffs Richman and Dapat organized and created the Haines and Krieger short sale department. Defendant Haines informed Plaintiffs that they wanted Dapat to do all of the listings and pay the Defendants a kick back in the form of a marketing fee." The Richman complaint further alleges that "[the H&K Parties] gave control of the short sale department to someone other than Plaintiff Dapat." The H&K Parties assert that this reference to "someone other" is H&K Realty, Fenn, and Howard. The Richman complaint's cause of action for quantum merit alleges that the Richman Parties provided uncompensated services to the H&K Parties, including the creation of the H&K short sale department and loan modification department in Arizona.

There is sufficient information to support the district court's determination that Fenn and Howard consulted with Levine regarding the potential liability regarding all defendants in the Merit complaint, that the information given to Levine would have related to the formation and operation of H&K Realty, that this information would have been given to the H&K Parties' counsel in the Merit action, and that it is relevant to the

present litigation. There is sufficient evidence to support a conclusion that the Merit action is substantially similar to the Richman Parties' action. *See Waid*, 121 Nev. at 610, 119 P.3d at 1223.

The district court also found that "[i]nformation learned by Mr. Levine and the Marks Law Office from Messrs. Fenn and Howard could be significantly harmful to the Defendants [the H&K Parties] . . . if used in this matter." Specifically, information related to the formation and operation of H&K Realty could be harmful. The district court further found that Levine, the Law Office of Daniel Marks, and the Richman Parties did not provide informed, written consent regarding the representation. We conclude that substantial evidence supported the district court's finding that the Richman Parties' interests are materially adverse, and the information learned could be significantly harmful to the H&K Parties.

Based on the record, the district court also weighed the varying interests of the parties and that of the public as required by *Brown. See Brown v. Eighth Judicial Dist. Court*, 116 Nev. 1200, 1205, 14 P.3d 1266, 1269-70 (2000). Therefore, we conclude that the district court did not manifestly abuse its discretion when it granted the H&K Parties' motion to disqualify because it properly considered the competing interests involved. *See Nevada Yellow Cab Corp.*, 123 Nev. at 54, 152 P.3d at 743 (noting that the district court was more familiar with the case than this court and had the best opportunity to evaluate the validity of a disqualification).[3]

---

[3]The Richman Parties also argue that Levine can still be timely screened from this matter, so this court should not impute disqualification to the Law Office of Daniel Marks. We conclude that it is too late to

*continued on next page...*

SUPREME COURT
OF
NEVADA

(O) 1947A

*The district court did not abuse its discretion in determining that an evidentiary hearing was not required*

The Richman Parties argue that the district court should have conducted an evidentiary hearing to resolve disputed issues of material fact prior to the disqualification to determine what Fenn and Howard actually told Levine. The Richman Parties argue that NRPC 1.18 requires at least some disclosure of the information discussed at the prospective client consultation. We disagree.

A district court, in determining the nature of a hearing, should ensure that the parties present sufficient information to support its decision. *Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. ___, ___, 235 P.3d 592, 601 (2010).[4] Under NRPC 1.9, we have explained that "[i]n proving that a prior representation is substantially related to present litigation . . . the moving party is not required to divulge the confidences actually communicated, nor should a court inquire into whether an

---

*...continued*
properly screen Levine. *See Ryan's Express v. Amador Stage Lines*, 128 Nev. ___, ___, 279 P.3d 166, 172 (2012) (discussing that "the timing of implementation of screening measures in relation to the occurrence of the disqualifying event is relevant in determining whether the screen was properly erected"). Levine has already worked on substantive portions of the case, made multiple appearances, and filed motions on behalf of the Richman Parties. The record also does not indicate that Levine took any reasonable steps to avoid exposure to disqualifying information.

[4]Recently, we concluded that an evidentiary hearing was required when determining whether a lawyer has been properly screened. *Ryan's Express*, 128 Nev. at ___, 279 P.3d at 173. This case is distinguishable because screening determinations are not as likely to involve confidential attorney-client communications. Therefore, the determination of whether to hold an evidentiary hearing involving disqualifications based on prospective clients remains in the district court's discretion.

attorney actually acquired confidential information in the prior representation which is related to the current representation." *Robbins v. Gillock*, 109 Nev. 1015, 1018, 862 P.2d 1195, 1197 (1993); *see also* NRPC 1.6(a) (a "lawyer shall not reveal information relating to representation of a client unless the client gives informed consent."). "The court should instead undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter." *Robbins*, 109 Nev. at 1018, 862 P.2d at 1197.

We conclude that the district court acted within its discretion in declining to hold an evidentiary hearing since the disqualification matter is not case-concluding. *See Bahena*, 126 Nev. at ___, 235 P.3d at 600-01. Prospective clients meeting with an attorney must have the "utmost confidence" that confidential information disclosed to an attorney will remain confidential. *See Ryan's Express*, 128 Nev. at ___, 279 P.3d at 169. "One purpose of disqualification is to prevent disclosure of confidential information that could be used to a former client's disadvantage." *Nevada Yellow Cab Corp.*, 123 Nev. at 53, 152 P.3d at 743. Forcing prospective clients to divulge confidential information at a hearing could lessen a client's ability and willingness to candidly communicate with his or her attorney during initial consultations.

The district court was very aware of the importance of client confidences and the attorney-client privilege; and hesitant to force a client, former client, or prospective client to take the stand under oath and testify to confidential matters and the substance of their interactions. It made its findings based on substantial evidence, including numerous declarations and affidavits, pleadings, the information sheet, unsigned retainer agreement, notes from the initial consultation, emails, and letters. Among

these, the district court found that it was reasonable to infer that: (1) Fenn and Howard consulted with Levine regarding the liability of the draft complaint in the Merit action on behalf of the H&K Parties, and (2) Levine received confidential information from Fenn and Howard regarding the formation and operation of H&K Realty that was relevant to the issues raised in this litigation. It further found that information Levine and the Law Office of Daniel Marks learned from Fenn and Howard could be significantly harmful to the H&K Parties if used by the Richman Parties in this matter. Conducting an evidentiary hearing to determine specifics regarding what Fenn and Howard said to Levine would run counter to our analysis that opposing counsel under NRPC 1.9 are not required to divulge confidences actually communicated. *See Robbins*, 109 Nev. at 1018, 862 P.2d at 1197.

Accordingly, we ORDER the petition DENIED.[5]

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

---

[5]We have considered the parties' remaining arguments and conclude they are without merit.

cc: Hon. Kenneth C. Cory, District Judge
Law Office of Daniel Marks
Bailey Kennedy
Ogletree Deakins Nash Smoak & Stewart
Eighth District Court Clerk